**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DENESE FRIENDS-SMILEY, on behalf of herself and as Mother and Next Friend of R.S., JADA SMILEY, MICHEAUX CORBETT, and TERESA RUSH, as Mother and Next Friend of D.R., | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 16 cv 5646 |
| | ) | |
| THE CITY OF CHICAGO, and CHICAGO POLICE DEPARTMENT OFFICERS ZEYAD MATLOCK, Star #3891, GINO ANTONIAZZI, Star #13961, GABRIEL CAMPOS, Star #5930, EDWIN DIAZ, Star #7213, JEFFREY MAYER, Star #16583, and DONNELL CRENSHAW, Star #15720, | ) ) ) ) ) ) ) ) | Judge Ronald A. Guzman  Magistrate Judge Sheila M. Finnegan |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

NOW COMES the Plaintiffs, DENESE FRIENDS-SMILEY, on behalf of herself and as

Mother and Next Friend of R.S., JADA SMILEY, MICHEAUX CORBETT, and TERESA

RUSH, as Mother and Next Friend of D.R., by and through counsel, Samuels & Associates, Ltd.,

and complaining of the defendants CITY OF CHICAGO, and CHICAGO POLICE OFFICERS

ZEYAD MATLOCK, Star #3891, GINO ANTONIAZZI, Star #13961, GABRIEL CAMPOS,

Star #5930, EDWIN DIAZ, Star #7213, JEFFREY MAYER, Star #16583, and DONNELL

CRENSHAW, Star #15720, states as follows:

## INTRODUCTION

1. This is a civil action seeking damages against defendants for committing acts under color of law, and depriving plaintiffs of rights secured by the Constitution and laws of the United States.

## JURISDICTION

2. This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

3. The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

## PARTIES

4. PLAINTIFFS DENESE FRIENDS-SMILEY, on behalf of herself and as Mother and Next Friend of R.S., JADA SMILEY, MICHEAUX CORBETT, and TERESA RUSH, as Mother and Next Friend of D.R., are citizens of the United States of America, who reside in Cook County, Illinois.

5. DEFENDANTS OFFICERS ZEYAD MATLOCK, Star #3891, GINO ANTONIAZZI, Star #13961, GABRIEL CAMPOS, Star #5930, EDWIN DIAZ, Star #7213, JEFFREY MAYER, Star #16583, and DONNELL CRENSHAW, Star #15720 ("Defendant Officers") were, at the time of this occurrence, duly licensed City of Chicago Police Officers. They engaged in the conduct complained of in the course and scope of their employment and under color of law. They are sued in their individual capacities.

6.     DEFENDANT CITY OF CHICAGO ("City") is a municipal corporation duly incorporated under the laws of the State of Illinois, and is the employer and principal of the police officer defendants.

## FACTS

7.     On June 9, 2014, DENESE FRIENDS-SMILEY was at her home, 62 East 102nd Street, with her daughter, JADA SMILEY, and son, R.S.  Also present was her nephew, D.R., and MICHEAUX who, although he was never formally adopted, was reared by Denese and has lived with her for years.

8.     Unbeknownst to Plaintiffs, the defendant officers were in their neighborhood, chasing after a suspected drug dealer who had fled from them.

9.     D.R. and R.S. were on the porch across the street when they saw a person running, followed a few seconds later by police officers who were giving pursuit.

10.    Moments later, D.R. and R.S. saw the person peek his head up near the front gate of the yard next door to the Smiley house.

11.    Jada, who was inside the house, heard a commotion (the gate) and went to see what was going on outside.

12.    When she reached the front porch, a police officer asked for permission to search their property for the missing suspect.  Jada told him no.

13.    Upon information and belief, that officer was Defendant Campo.

14.    Seeing the heavy police presence, Jada told D.R. and R.S. to come inside the house where it was safe.

15.    Once D.R. and R.S. returned to the Smiley home, they closed and locked all the doors and windows on the main floor.

16.     They also told Micheaux, who was in the basement, to close and lock the doors downstairs.

17.     In the basement of the Smiley house, a door opens up into the backyard. There is both a wooden, inner door ("main door"), and a gated-screen door ("screen door").

18.     The wooden, inner door had been open, while the gated-screen door had been closed.

19.     Micheaux locked the screen door, and he closed and locked the main door.

20.     Without knocking and announcing, the defendant officers forced their way into the Smiley house by forcing open the screen door and busting in the main door.

21.     Without any lawful basis whatsoever, the defendant officers entered the Smiley house.

22.     At no time did the defendant officers see any individual run onto the property located at 62 East 102nd Street, let alone into Plaintiffs' residence.

23.     In fact, Defendant Officers could not have seen anyone run into Plaintiffs' residence because a six-foot tall wooden fence surrounds the entire property.

24.     Nevertheless, Defendant Officers, without probable cause or any other lawful basis, entered Plaintiff's property by breaking into her basement.

25.     In so doing, Defendant Officers busted the lock on her doors.

26.     At no time did the defendant officers see an alleged offender enter the residence located at 62 East 102nd Street.

27.     In fact, no written report created by any of the defendants in relation to this incident states that the suspect they were chasing was seen entering the Smiley home.

28.     Nevertheless, the defendant officers, without a warrant or any other lawful basis, entered the residence of the Plaintiffs.

29. Reflexively, Plaintiff Denese attempted to stop the intruders from entering her home by holding her arms out to each side.

30. Upon entering the residence, the defendant officers did not identify themselves and did not ask Denese for her name; the names of anyone who lived there; if someone had recently entered, or attempted to; if she was hiding any alleged drug dealer; or if anyone in the house was in danger or needed assistance.

31. Instead, Defendant Officers immediately began manhandling Dense.

32. At the time of this occurrence, Denese was 47 years old and weighed 170 lbs. She was completely unarmed and posed absolutely no physical threat to the defendants.

33. In fact, at this time, Plaintiff Denese was still wearing braces one of her arms and one of her legs as she was recovering from a motor vehicle accident that occurred approximately two weeks earlier while on vacation.

34. One of the defendant officers twisted Plaintiff Denese's braced arm behind her back and shoved her to the ground.

35. Hearing the commotion, Jada, who had been upstairs with the boys, came down to the basement. The boys—D.R. and R.S.—stayed near the stairs.

36. Upon seeing her mother being physically abused by the defendant officers, Jada demanded that they leave her alone and leave their house.

37. In response, the Defendant Officers told them words to the effect that this was, "their (expletive) house."

38. Defendant Officers then began to attack Plaintiff Jada.

39. While Jada attempted to shield her mother from their attack, the defendant officers punched her in the face.

40.   Upon information and belief, the defendant officers who punched Jada was Defendant Antoniazzi and/or Campo.

41.   The defendant officers threw Jada to the ground.

42.   Although she posed no physical threat to the defendant officers, one of the defendants instructed his fellow officer to, "taze that bitch," and he did.

43.   Without any lawful basis, Jada was tazed multiple times by the defendant officers.

44.   Upon information and belief, Defendant Matlock was the officer who actually deployed the tazer against an unarmed Jada.

45.   Prior to Defendant Matlock deploying his tazer, there was ample time for any of the other Defendant Officers to intervene to prevent this unwarranted use of unreasonable and excessive force, but they did not.

46.   Without any lawful basis, the defendant officers dragged Denese to a chair and handcuffed each wrist to the corresponding arm of the chair.

47.   Then, and without any lawful basis, the defendant officers took Jada and sat her on her mother's lap, handcuffing her arms behind her and to her mother.

48.   At the time of this occurrence, Jada weighed approximately 280 lbs.

49.   Despite complaining to Defendant Officers that Jada's weight was troubling Denese, especially in light of her recent accident and injuries, the defendant officers left them in that position.

50.   The decision of the defendant officers to handcuff and leave Plaintiff Denese and Jada in that manner was cruel and unusual, served no law enforcement purpose, and was only meant to harass, embarrass, and punish them.

51. The defendant officers used obscene and abusive language against the Plaintiffs, hurling racial slurs at them and other derogatory and demeaning terms.

52. One of the defendants grabbed Plaintiff Jada by the roots of her hair and hit her multiple times with a flashlight.

53. Upon information and belief, the defendant officer who struck Jada with his flashlight was Defendant Diaz.

54. Defendant Matlock threatened to taze the minor plaintiffs if they tried to go upstairs to retrieve their phones and/or record this incident.

55. As Denese sat handcuffed to a chair with her daughter's weight pressing down on her, she noticed Micheaux standing still and erect with a look of pure terror on his face.

56. Standing in front of Micheaux was a defendant officer. Without any lawful basis, the defendant officer had drawn his weapon and was pointing it at Micheaux's head.

57. The defendants officer then threated to shoot and kill the plaintiffs' dogs if they kept barking.

58. Defendant Officers then commenced to search Plaintiffs' residence, though they had no legal basis.

59. During the course of the defendants' fruitless search, other officers arrived to inform them that the suspect had been caught down the street where he was found sitting on the sofa watching TV.

60. The defendant officers then left the Smiley house, leaving Plaintiffs Denese and Jada handcuffed together.

61.    Rather than apologize to the Plaintiffs, to cover up for their blatant misconduct and abuse of authority, the defendant officers had Jada and Denese arrested. There was no probable cause, or any other legal basis, for their arrest or any of the charges leveled against them.

62.    After being taken to the hospital for treatment, Plaintiffs were taken to the police station where they were processed.

63.    Although they knew her to be innocent, Defendants Diaz and Antoniazzi each signed a criminal complaint against Jada for battery.

64.    Although he knew her to be innocent, Defendant Matlock signed two criminal complaints against Denese for resisting/obstructing a peace officer and battery.

65.    For over a year, Plaintiffs Denese and Jada dealt with the stress of a criminal prosecution, knowing that their liberty was in jeopardy although they had done nothing wrong.

66.    Eventually, all the charges were dismissed against Denese and Jada in a manner indicative of their innocence.

67.    As a direct and proximate result of the unlawful actions of the defendants, Plaintiffs were injured, including physical injuries, loss of freedom, humiliation, embarrassment, pain and suffering, fear, emotional trauma, mental anguish, the deprivation of their constitutional rights and dignity, interference with their normal life, lost time, permanent disfigurement, and attorneys' fees.

### COUNT I: Illegal Search and Seizure – Knock and Announce (4th Amendment)
*Against the Defendant Officers*

68.    Plaintiffs re-allege each of the foregoing paragraphs, as if fully set forth here.

69.    The defendant officers failed to knock and announce prior to their entry, thus violating the Plaintiffs' rights under the Fourth Amendment of the United States Constitution.

70. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiffs to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

WHEREFORE the Plaintiffs, pursuant to 42 U.S.C. § 1983, demand judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other relief this Court deems equitable and just.

## COUNT II: Illegal Search and Seizure (4th Amendment)
*Against the Defendant Officers*

71. Plaintiffs re-allege each of the foregoing paragraphs, as if fully set forth here.

72. The actions of the defendant officers constituted an unreasonable and unjustifiable search and seizure of the Plaintiffs' person and property, thus violating their rights under the Fourth Amendment of the United States Constitution.

73. The aforementioned actions of the defendants were the direct and proximate cause of the Constitutional violations set forth above, and directly and proximately caused Plaintiffs to suffer, without limitation, pain, suffering, humiliation, emotional distress, mental anguish, and financial loss.

WHEREFORE the Plaintiffs, pursuant to 42 U.S.C. § 1983, demand judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other relief this Court deems equitable and just.

## COUNT III: Excessive Force (4th Amendment)
*By Plaintiffs Micheaux, Jada and Denese Against the Defendant Officers*

74. Plaintiffs re-allege each of the foregoing paragraphs, as if fully set forth here.

75.   The actions of the defendant officers constituted unreasonable, unjustifiable, and excessive force against Plaintiffs, thus violating their rights under the Fourth Amendment to the United States Constitution.

76.   As a proximate result of the above-detailed actions of the defendant officers, Plaintiffs were injured, including severe pain, physical injury, mental suffering, anguish and humiliation, emotional distress, and fear.

WHEREFORE the Plaintiffs, JADA SMILEY and DENESE FRIENDS-SMILEY and MICHEAUX CORBETT, pursuant to 42 U.S.C. § 1983, demand judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other relief this Court deems equitable and just.

### COUNT IV: Failure to Intervene (Excessive Force)
*Against the Defendant Officers*

77.   Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

78.   The actions of the defendants constituted unreasonable, unjustifiable, and unlawful use of force against the Plaintiffs, thus violating her rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

79.   One or more of the defendant officers failed to intervene when one or more other defendant officers used excessive force against a plaintiff, as alleged above, even though there was no legal basis to use any force against a plaintiff.

80.   One or more of the defendant officers knew that one or more of the defendant officers was about to use excessive force against a plaintiff, and had an opportunity to prevent the harm to plaintiff from occurring, but failed to take steps to prevent the harm from occurring.

81. The aforementioned actions of one or more of the defendant unknown officers was the direct and proximate cause of the Constitutional violations set forth above.

82. As a proximate result of the above-detailed actions of the defendant officers, Plaintiffs were injured, including mental anguish, embarrassment, and humiliation, exposing them to public scandal and disgrace, and caused them to incur various expenses, including but not limited to attorneys' fees, all to Plaintiffs' damage.

WHEREFORE the Plaintiffs, JADA SMILEY and DENESE FRIENDS-SMILEY and MICHEAUX CORBETT, pursuant to 42 U.S.C. § 1983, demand judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other relief this Court deems equitable and just.

## COUNT V: False Arrest (4th Amendment)
### *Plaintiffs Jada and Denese against the Defendant Officers*

83. Plaintiffs re-allege each of the foregoing paragraphs, as if fully set forth here.

84. The actions of the individual defendant officers, described above, whereby the defendants knowingly caused Plaintiffs Jada and Dense to be arrested and imprisoned without probable cause or any other justification, constituted deliberate indifference to the Plaintiffs' rights under the U.S. Constitution, thus violating the Fourth Amendment to the Constitution.

85. As a direct and proximate result of these constitutional violations, Plaintiffs suffered great pain, anguish, despair, and the loss of their liberty, as more fully set forth above.

WHEREFORE the Plaintiffs, JADA SMILEY and DENESE FRIENDS-SMILEY, pursuant to 42 U.S.C. § 1983, demand judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other relief this Court deems equitable and just.

11

## COUNT VI: Failure to Intervene (False Arrest)
*Plaintiffs Jada and Denese against the Defendant Officers*

86.    Plaintiffs realleges each of the foregoing paragraphs as if fully set forth here.

87.    The actions of the defendants constituted unreasonable, unjustifiable, and unlawful seizure of Plaintiffs Jada and Denese, thus violating her rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

88.    One or more of the defendant officers failed to intervene when one or more other defendant officers unreasonably seized Plaintiffs, as alleged above, even though there was no legal basis to seize Plaintiffs.

89.    One or more of the defendant officers knew that one or more of the defendant officers were about to seize Plaintiffs, and had an opportunity to prevent the harm to Plaintiffs from occurring, but failed to take steps to prevent the harm from occurring.

90.    The aforementioned actions of one or more of the defendant unknown officers was the direct and proximate cause of the Constitutional violations set forth above.

91.    As a proximate result of the above-detailed actions of the defendant officers, Plaintiffs were injured, including the deprivation of their liberty and the taking of their person.  In addition, the violations proximately caused Plaintiffs mental anguish, embarrassment, and humiliation, exposed them to public scandal and disgrace, and caused them to incur various expenses, including but not limited to attorneys' fees, all to Plaintiffs' damage.

WHEREFORE the Plaintiffs, JADA SMILEY and DENESE FRIENDS-SMILEY, pursuant to 42 U.S.C. § 1983, demand judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other relief this Court deems equitable and just.

**COUNT VII: Conspiracy to Deprive Constitutional Rights**
*Against the Defendant Officers*

51.     Plaintiffs reallege each of the foregoing paragraphs as if fully set forth here.

52.     As described more fully above, Defendant Officers reached an agreement amongst themselves to frame Plaintiffs for crimes they did not commit and illegally seize them, and to thereby deprive Plaintiffs of their Constitutional rights, all as described more fully throughout this Complaint.

53.     In this manner, Defendant Officers, acting in concert with each other, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

54.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity. This includes the filing of inaccurate and incomplete official statements and complaints.

55.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' rights were violated, and she suffered damages, severe emotional distress and anguish, and a deprivation of her liberty, as is more fully alleged above.

56.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff and others.

57.     As a proximate result of the above-detailed actions of Defendant Officers, Plaintiffs were injured, including the deprivation of their liberty. In addition, the violations proximately caused Plaintiffs mental anguish, embarrassment, and humiliation, exposed her to public scandal and disgrace, and caused her to incur various expenses, all to Plaintiffs' damage.

        WHEREFORE the Plaintiffs, pursuant to 42 U.S.C. § 1983, demand judgment against the Defendant Officers for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other relief this Court deems equitable and just.

### COUNT VIII: Intentional Infliction of Emotional Distress
*Against Defendant Officers*

69.     Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

70.     The above-detailed conduct by Defendant Officers was extreme and outrageous, exceeding all bounds of human decency.

71.     Defendants Officers performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such distress.

72.     Defendant City of Chicago is sued in this to the doctrine of *respondeat superior*, in that Defendant Officers performed the actions complained of while on duty and/or in the employ of Defendant City of Chicago, and while acting within the scope of their respective employment.

73.     As a direct and proximate result of this conduct, Plaintiffs did, in fact, suffer severe emotional distress, resulting in injury to their mind, body, and nervous system, including loss of sleep, mental anguish, and excruciating physical pain and emotional suffering.

        WHEREFORE the Plaintiffs demands judgment against all Defendants for all actual and compensatory damages, including legal costs, and other such relief as the Court deems just and appropriate.

### COUNT IX: Malicious Prosecution
*Plaintiffs Denese and Jada Against Defendants Diaz, Antoniazzi, and Matlock*

74.     Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

75.     Defendants Diaz, Antoniazzi, and Matlock commenced and/or continued criminal charges against Plaintiffs Jada and Denese.

76. Defendants Diaz, Antoniazzi, and Matlock knew that there was no probable cause for these charges to be instituted.

77. Defendants Diaz, Antoniazzi, and Matlock the charges against Plaintiffs Jada and Dense out of malice.

78. All the charges against Plaintiffs Jada and Denese were dismissed in a manner indicative of and/or consistent with the innocence of the plaintiffs.

79. Defendant City of Chicago is sued in this to the doctrine of *respondeat superior*, in that Defendants Diaz, Antoniazzi, and Matlock performed the actions complained of while on duty and/or in the employ of Defendant City of Chicago, and while acting within the scope of their employment.

80. As a direct and proximate result of this conduct, Plaintiffs were injured, including emotional distress, attorneys' fees, and loss of sleep.

WHEREFORE the Plaintiffs, JADA SMILEY and DENESE FRIENDS-SMILEY, demand judgment against the Defendants Diaz, Antoniazzi, Matlock, and City of Chicago for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other relief this Court deems equitable and just.

## COUNT X: 745 ILCS 10/9-102 – Indemnification
*Against Defendant City of Chicago*

81. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

82. Defendant City of Chicago is the employer of Defendant Officers.

83. The individually named defendants committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, should any individually named defendant be found liable on one or more of the claims set forth above, Plaintiffs demands that, pursuant to 745 ILCS 10/9-102, the

Defendant City of Chicago be found liable for any judgment Plaintiffs obtain against said defendant, as well as attorneys' fees and costs awarded.

**PLAINTIFFS DEMANDS TRIAL BY JURY.**

Respectfully Submitted,

By: /s/ Jeanette Samuels
One of Plaintiff's Attorneys

SAMUELS & ASSOCIATES, LTD.
3440 S. Cottage Grove Ave, #504
Chicago, IL 60616
T: 872-588-8726
E: sam@jsamlaw.com

16